333 F.3d 339
 Kristopher OKWEDY, Keyword Ministries, Inc., Plaintiffs-Appellants,
v.
Guy V. MOLINARI, individually and in his official capacity as President of the Borough of Staten Island, New York, PNE Media, John Doe Nos. 1-5, Jane Doe Nos. 1-5, Defendants-Appellees.
 Docket No. 01-7941.
 United States Court of Appeals, Second Circuit.
 Argued: April 24, 2002.
 Decided: June 24, 2003.
 
 Michael J. DePrimo (Brian Fahling and Stephen M. Crampton, on the brief) AFA Center for Law & Policy, Tupelo, Miss., for Appellants.
 Kathleen Alberton, Assistant Corporation Counsel (Michael A. Cardozo, Corporation Counsel of the City of New York, Larry A. Sonnenshein, and Dana Biberman, of counsel, on the brief), City of New York, New York, N.Y., for Appellee Guy Molinari.
 Donald Rosenthal, Rosenthal Judell & Uchima, New York, N.Y., for Appellee PNE Media.
 Before: F.I. PARKER, STRAUB, and SOTOMAYOR, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiffs-appellants, Kristopher Okwedy and Keyword Ministries, Inc., appeal from a judgment entered July 23, 2001 in the United States District Court for the Eastern District of New York (Nina Gershon, Judge), dismissing their complaint against defendants-appellees, Guy V. Molinari, the Borough President of Staten Island, and PNE Media, LLC ("PNE"), a company that produces and displays billboards. The complaint alleges that plaintiffs contracted with PNE to post billboards that quoted four different translations of Leviticus 18:22 denouncing homosexuality as an abomination, loathsome, detestable, and an enormous sin. The billboards were located in or near Staten Island neighborhoods containing a significant number of gay and lesbian residents. Following several days of public controversy, Molinari faxed a letter to PNE regarding the billboards, and before the day was out PNE removed plaintiffs' signs from the billboards. The complaint includes claims under 42 U.S.C. §§ 1983, 1985(3) and 1986 based on defendants' alleged violation of plaintiffs' rights under the Free Speech, Establishment and Free Exercise Clauses of the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and various state common law and statutory claims. The district court dismissed all of plaintiffs' federal claims for failure to state a claim, and declined to exercise supplemental jurisdiction over plaintiffs' state-law claims.
 
 
 2
 On appeal, plaintiffs raise a number of challenges to the district court's dismissal of their claims, all but one of which we consider in a summary order issued separately from this opinion, and filed today. We write here only to make clear that a public-official defendant who threatens to employ coercive state power to stifle protected speech violates a plaintiff's First Amendment rights even if the public-official defendant lacks direct regulatory or decisionmaking authority over the plaintiff or a third party that facilitates the plaintiff's speech.
 
 I. BACKGROUND
 
 3
 Plaintiffs allege the following facts in their Complaint. Plaintiff Kristopher Okwedy is an ordained minister and the pastor of Keyword Ministries, a Christian church dedicated to promoting traditional biblical values. Compl. ¶ 11. He believes, and his religion teaches, that homosexuality is a sin. He further believes that he owes a duty to God both to expose the sin of homosexuality and to proclaim "the good news that homosexuals can be delivered from their sin through the power of Jesus Christ." Id. ¶ 10.
 
 
 4
 On February 2, 2000, plaintiffs entered into a contract with defendant PNE that called for PNE to design and produce a billboard sign for plaintiffs, and to display it for one month starting on or about March 1, 2000. On February 11, 2000, Okwedy received a copy of PNE's artwork for the sign, which he approved with some minor changes on February 14, 2000. On February 22, 2000, plaintiffs and PNE entered into a second contract, calling for PNE to display an additional copy of plaintiffs' sign on another Staten Island billboard under the same terms as set forth in the first contract.
 
 
 5
 PNE posted plaintiffs' signs on March 3, 2000. The signs read:
 
 
 Word on the Street
 
 4 WAYS TO SAY LEVITICUS 18:22
 
 6
 THOU SHALL NOT LIE WITH MANKIND AS WITH WOMANKIND: IT IS ABOMINATION (KING JAMES)
 
 
 7
 YOU SHALL NOT LIE WITH A MALE AS WITH FEMALE: THAT WILL BE LOATHSOME (JAMES MOFFAT)
 
 
 8
 DO NOT LIE WITH A MAN AS WITH A WOMAN: IT IS DETESTABLE (BERKLEY VERSION)
 
 
 9
 HOMOSEXUALITY IS ABSOLUTELY FORBIDDEN FOR IT IS AN ENORMOUS SIN (LIVING BIBLE)
 
 I AM YOUR CREATOR
 
 10
 J.A. at 29.
 
 
 11
 Plaintiffs alleged, upon information and belief, that their signs were placed "in or near neighborhoods containing a significant number of persons who either engaged in or approved of homosexual conduct," Compl. ¶ 18, and that "the content of the signs stirred public opposition among the homosexual community, its supporters, and borough politicians." Id. ¶ 19.
 
 
 12
 On March 8, 2000, defendant Guy Molinari faxed a letter to PNE under letterhead reading "City of New York[,] President of the Borough of Staten Island." Id. ¶ 21; J.A. at 31. Molinari's letter stated:
 
 
 13
 For the last two days we have attempted to contact your office, without success....
 
 
 14
 I write regarding the recent appearance on two of your Staten Island billboards of four translations of Leviticus 18:22. As you are probably aware this particular biblical verse is commonly invoked as a biblical prohibition against homosexuality.
 
 
 15
 The sponsor for the billboard message is nowhere apparent on the billboard, so I am writing to you with the hope that I can establish a dialogue with both yourself and the sponsor as quickly as possible.
 
 
 16
 Both you and the sponsor of this message should be aware that many members of the Staten Island community, myself included, find this message unnecessarily confrontational and offensive. As Borough President of Staten Island I want to inform you that this message conveys an atmosphere of intolerance which is not welcome in our Borough.
 
 
 17
 P.N.E. Media owns a number of billboards on Staten Island and derives substantial economic benefits from them. I call on you as a responsible member of the business community to please contact Daniel L. Master, my legal counsel and Chair of my Anti-Bias Task Force... to discuss further the issues I have raised in this letter.
 
 
 18
 J.A. at 31.
 
 
 19
 Later in the day on March 8, PNE issued a statement to the media, a copy of which was faxed to attorney Master at the Borough President's office, announcing that plaintiffs' signs had been taken down. The press release declared that PNE had removed the "controversial copy posted on two billboards on Staten Island for failure to comply with PNE guidelines." Id. at 33. According to the press release, PNE had "ascertained that the copy was inadvertently posted without compliance with [PNE's] standard requirement that all advertising disclose the identity of the advertiser." Id. The release added that "[t]he message posted by Pastor Okwedy on these two Staten Island boards does not represent the views of PNE Media, LLC. While PNE respects its advertisers' free speech rights, PNE itself does not discriminate based on sexual orientation." Id.
 
 
 20
 Plaintiffs' attorney faxed a letter to PNE on March 21, 2000, notifying PNE that it was in breach of contract and demanding that PNE cure the breach by re-posting plaintiffs' signs on the same billboards for a period of thirty days. PNE responded by sending plaintiffs a check in the amount of $2,515.68, the contract amount pre-paid by plaintiffs.
 
 
 21
 Okwedy and Keyword Ministries sued PNE, Molinari, and a number of John and Jane Does under 42 U.S.C. § 1983 for violation of the Establishment, Free Speech, and Free Exercise Clauses of the First Amendment and for violation of the Equal Protection Clause of the Fourteenth Amendment; under 42 U.S.C. § 1985(3) for conspiracy to interfere with constitutional rights; and under 42 U.S.C. § 1986 for failing to prevent interference with constitutional rights. Plaintiffs alleged supplemental state-law claims for, among other things, discrimination, breach of contract and tortious interference with contract. They sought actual and punitive damages, declaratory and injunctive relief, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.
 
 
 22
 On defendants' motion, the district court dismissed the complaint for failure to state a claim upon which relief may be granted. Okwedy v. Molinari, 150 F.Supp.2d 508 (E.D.N.Y.2001).
 
 II. DISCUSSION
 
 23
 Plaintiffs' Free Speech Clause claim turns on the question of whether Molinari's letter to PNE was an unconstitutional "implied threat[] to employ coercive state power to stifle protected speech," or a constitutionally-protected expression by Molinari of his own personal opinion. See Hammerhead Enters., Inc. v. Brezenoff, 707 F.2d 33, 39 (2d Cir.1983). As we noted in Hammerhead, "oral or written statements made by public officials" could give rise to a valid First Amendment claim "[w]here comments of a government official can reasonably be interpreted as intimating that some form of punishment or adverse regulatory action will follow the failure to accede to the official's request." Id.; see also X-Men Sec., Inc. v. Pataki, 196 F.3d 56, 69-72 (2d Cir.1999) (applying Hammerhead); Rattner v. Netburn, 930 F.2d 204, 209-10 (2d Cir.1991) (same).
 
 
 24
 The district court held that Molinari's letter was constitutionally-protected speech because the "letter ... was not reasonably susceptible to a threatening interpretation, and [Molinari] did not have regulatory authority over PNE's business." Okwedy v. Molinari, 150 F.Supp.2d at 515. In reaching this conclusion, the district court relied heavily on the latter of these two considerations — the fact that Molinari did not have direct regulatory or decisionmaking authority over PNE. See, e.g., id. at 518 ("Molinari did not have decisionmaking authority over billboards... [and prior Second Circuit caselaw] emphasized the importance of this fact in finding that the First Amendment rights of the plaintiffs in those cases had not been violated."); id. at 517-18 ("If, as [Hammerhead and X-Men] held, public officials who did not have decisionmaking authority in a matter had a right to persuade others not to deal with certain individuals or to participate in disseminating their message ... [defendants in the present case] cannot be found to have acted unconstitutionally [just] because their efforts to persuade [PNE] were successful.").
 
 
 25
 Although the existence of regulatory or other direct decisionmaking authority is certainly relevant to the question of whether a government official's comments were unconstitutionally threatening or coercive, a defendant without such direct regulatory or decisionmaking authority can also exert an impermissible type or degree of pressure. In Hammerhead, we spoke of threats of "some form of punishment or adverse regulatory action." Hammerhead, 707 F.2d at 39 (emphasis added). Applying this principle, in Rattner we reversed the district court's grant of summary judgment for defendants (members of the local village council) because we concluded that "the record, taken in the light most favorable to [the plaintiff], reveals statements by [the defendant] that a reasonable factfinder could ... interpret as intimating that some form of punishment or adverse regulatory action would follow if the Gazette [, the village chamber of commerce's newspaper,] continued to air [plaintiff's] views." Rattner, 930 F.2d at 209 (internal punctuation omitted). We described the offending conduct of defendants as "threatening [the chamber of commerce and its member businesses] with boycott or discriminatory enforcement of Village regulations if they permitted the publication of additional statements by [the plaintiff]." Id. at 210. In other words, we considered not only the threatened use of official power by defendants (i.e., discriminatory enforcement of regulations) but also the threatened use of other coercive means (i.e., a boycott led by the members of the village council) in our analysis of the question of whether defendants' conduct constituted an unconstitutional threat.
 
 
 26
 Similarly, in X-Men, although we noted that defendants were "not decisionmakers but merely advocates," that fact did not end our analysis. X-Men, 196 F.3d at 70. Before rejecting plaintiffs' argument that the defendant government officials (a former member of the New York State Assembly and a member of the United States House of Representatives) had impermissibly interfered with plaintiffs' First Amendment rights, we also noted that:
 
 
 27
 While the complaint alleges that the [defendant-] legislators exerted `pressure' on the decisionmakers, there is no allegation that such `pressure' took the form of anything other than speech. Though they are alleged to have communicated with State and federal regulators, a Congressional committee, and the public, the [defendant-] legislators are not alleged to have threatened the decisionmakers in any way or to have engaged in coercive or intimidating conduct.
 
 
 28
 Id. at 71.
 
 
 29
 Thus, the fact that a public-official defendant lacks direct regulatory or decisionmaking authority over a plaintiff, or a third party that is publishing or otherwise disseminating the plaintiff's message, is not necessarily dispositive in a case such as this. What matters is the distinction between attempts to convince and attempts to coerce. A public-official defendant who threatens to employ coercive state power to stifle protected speech violates a plaintiff's First Amendment rights, regardless of whether the threatened punishment comes in the form of the use (or, misuse) of the defendant's direct regulatory or decisionmaking authority over the plaintiff, or in some less-direct form.
 
 
 30
 In the present case, a jury could find that Molinari's letter contained an implicit threat of retaliation if PNE failed to accede to Molinari's requests. In his letter, Molinari invoked his official authority as "Borough President of Staten Island" and pointed out that he was aware that "P.N.E. Media owns a number of billboards on Staten Island and derives substantial economic benefits from them." He then "call[ed] on" PNE to contact Daniel L. Master, whom he identified as his "legal counsel and Chair of my Anti-Bias Task Force." Based on this letter, PNE could reasonably have believed that Molinari intended to use his official power to retaliate against it if it did not respond positively to his entreaties. Even though Molinari lacked direct regulatory control over billboards, PNE could reasonably have feared that Molinari would use whatever authority he does have, as Borough President, to interfere with the "substantial economic benefits" PNE derived from its billboards in Staten Island. Thus, to the extent that the district court concluded that plaintiffs had failed to state a claim because Molinari lacked direct regulatory or decisionmaking authority over PNE's billboard operations on Staten Island, that conclusion was erroneous.
 
 
 31
 We recognize that the district court did not rely solely on the fact that Molinari lacked direct regulatory authority over PNE. The court also based its decision on its determinations that "Molinari's letter is not reasonably susceptible to interpretation as threatening economic harm," and that because "[t]he letter called for a dialogue" it is not the type of inquiry "that could reasonably be viewed as designed to intimidate." See Okwedy v. Molinari, 150 F.Supp.2d at 518. However, the district court erred by reaching these conclusions about the intent and effect of the letter. Because the district court was considering a motion to dismiss, it should have viewed the language of Molinari's letter in the light most favorable to plaintiffs. See, e.g., Rattner, 930 F.2d at 210 (holding that "[t]he district court's ruling that the language of the [defendant's] letter, either standing alone or in all the circumstances, is not a veiled threat of boycott or reprisal does not view that language in the light most favorable to [the plaintiff] as the nonmoving party").
 
 
 32
 For all of these reasons, we find that the district court erred by dismissing plaintiffs' Free Speech Clause claim for failure to state a claim. Drawing all reasonable inferences from plaintiffs' factual allegations in their favor, we conclude that Molinari's letter could be found to contain an implicit threat of retaliation if PNE failed to accede to Molinari's requests. Therefore, we vacate the portion of the district court's judgment that dismissed plaintiffs' Free Speech Clause claim.
 
 III. CONCLUSION
 
 33
 For the foregoing reasons the part of the district court's judgment that dismissed plaintiffs' Free Speech Clause claim is VACATED and REMANDED to the district court for further proceedings consistent with this opinion. The remaining claims on appeal are dealt with in a Summary Order filed separately. The parties shall bear their own costs.