**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MICHAEL J. BRODHEIM,
    *Plaintiff-Appellant,*

v.

MICHAEL CRY,
    *Defendant-Appellee.*

No. 07-17081

D.C. No.
2:02-cv-0573 FCD
EFB (PC)

OPINION

Appeal from the United States District Court
for the Eastern District of California
Frank C. Damrell, District Judge, Presiding

Argued and Submitted
September 16, 2009—San Francisco, California

Filed October 28, 2009

Before: Stephen Reinhardt and Carlos T. Bea,
Circuit Judges, and Stephen G. Larson,* District Judge.

Opinion by Judge Larson;
Partial Concurrence and Partial Dissent by Judge Bea

---

*The Honorable Stephen G. Larson, United States District Judge for the Central District of California, sitting by designation.

14539

## COUNSEL

Joseph David Elford, Americans for Safe Access, Oakland, California, for the plaintiff-appellant.

Kelli Hammond, Office of the California Attorney General, Sacramento, California, for the defendant-appellee.

## OPINION

LARSON, District Judge:

Michael Brodheim, a prisoner at the California Medical Facility ("CMF"), appeals the district court's grant of summary judgment against him on his claim that his First Amendment right to petition the government for redress of grievances was violated by defendant Michael Cry, the prison Appeals Coordinator. The claimed violation occurred when a prison official denied Brodheim's written "interview request," and noted on the denial that Brodheim should be "careful" what he writes and requests in his administrative grievances. This was also followed by a request from the same official that Brodheim be transferred out of the CMF due to his filing of grievances and this lawsuit.

On cross-motions for summary judgment, the district court granted summary judgment in favor of the defendant prison officials, on the alternative bases of res judicata and that the undisputed facts failed to establish the required elements of a prison retaliation claim as set forth in *Rhodes v. Robinson*, 408 F.3d 559 (9th Cir. 2005). Specifically, the court found that no genuine issue of fact existed as to whether Brodheim suffered any retaliatory adverse action, whether an adverse action was taken in response to protected conduct, or whether his rights were sufficiently "chilled." Even if he had so suffered, the court held that any such adverse action was justified by a legitimate penological interest. Because we find the district court applied the incorrect legal standards in reaching these conclusions, we reverse the entry of summary judgment and remand the action.

Brodheim also appeals the district court's denial of his motion for partial summary judgment. Because we conclude genuine issues of material fact remain in dispute, we affirm the denial of his motion.

## I.  FACTUAL BACKGROUND

Plaintiff Michael Brodheim was at all times relevant to this action a prisoner at CMF in Vacaville, California. Defendant Cry was an Appeals Coordinator at CMF, defendant Ana Ramirez Palmer was the CMF Warden, and defendant J. Valadez was the Chief Deputy Warden (collectively, "defendants" or "appellees").

### A.  The Initial Grievance

The California Code of Regulations contains a multi-tiered administrative scheme for inmate grievances. Cal. Code Regs. tit. 15, §§ 3084.5. To file a grievance, an inmate submits his complaint on California Department of Corrections Form 602 (referred to as a "602"). Cal. Code Regs. tit. 15, §§ 3084.2(a). In the first, "informal" step of the grievance process, the

grievance is filed directly with any correctional staff member. This informal level is waived for a variety of grievances, including those concerning "alleged misconduct by a departmental peace officer." Cal. Code Regs. tit. 15, § 3084.5(a)(3)(G). The second level, also referred to as the First Formal Level, involves filing a 602 form with one of the institution's Appeals Coordinators. Cal. Code Regs. tit. 15, § 3084.5(b). Inmates are required to submit grievances to the Appeals Coordinator within fifteen working days of the incident at issue or of an unsatisfactory lower level decision. Cal. Code Regs. tit. 15, § 3084.6(c). The decision of the Appeals Coordinator may be appealed to the Warden at the Second Formal Level. Cal. Code Regs. tit. 15, § 3084.5(c). The Third Formal Level, also referred to as the "Director's Level," is the final avenue for administrative appeal. Cal. Code Regs. tit. 15, § 3084.5(d).

On May 21, 2001, Brodheim filed an administrative grievance with Correctional Officer Hearsum as a result of an incident on May 10, 2001. Brodheim claimed that, on that day, while returning to work, Hearsum told Brodheim that Brodheim was "out of bounds" and instructed him to take a different route back to his work assignment. Brodheim felt he was not in violation of any rule, told Hearsum this, and asked what rule he was violating. Brodheim contends that Hearsum got "visibly angry" at this question, and that another correctional officer nearby also got involved, acting "belligerently" towards him, and ordered him to leave. In his grievance, Brodheim claimed the officers' actions were "both contemptuous and discourteous" towards him, in violation of Department of Corrections regulations. He requested that he either be informed in writing of the rule he had been violating, or alternatively for the officers to be told that no such rule existed and that they be "remind[ed] . . . of their responsibilities to remain both respectful and courteous at all times in their dealings with inmates." When Hearsum did not respond to Brodheim's original grievance, Brodheim filed a copy of

the 602 form on June 18, 2001, directly with Appeals Coordinator Cry.

Upon receiving the grievance, Cry categorized it as a staff complaint and rejected it as untimely because it was filed more than fifteen days after the incident. On June 20, 2001, Brodheim sent Cry an "inmate request for interview," disputing this categorization of his grievance. Brodheim's request was stated as follows:

> This is not a "staff complaint" — any more than was my appeal involving C/O Lindstrom. I am requesting information (see part B). Any misconduct by C/O Hearsum or C/O Hernandez was incidental to the "story." I want to know why I could not walk thru Unit I and I think I'm entitled to an answer.

> You're such a "stickler" for the rules as *you* "see" them. Why not teach staff that they are *required* to respond informally to 602's w/in 10 working days — or is it your position that Title 15 applies only "against" inmates? Or, is it your position that I am not entitled to the information I request? What exactly *is* your position, Mr. Cry — obstruct 602's at all costs???

> This appeal was *timely* submitted to C/O Hearsum w/in 15 working days. (See my 6/18 note.)

> Thank you for your cooperation.

On June 21, 2001, Cry rejected the interview request with the following notation: "The 695[1] rejection form stands as noted. Untimely for a 5-10-01 issue. I'd also like to warn you to be careful what you write, req[u]est on this form."

---

[1]Referring to California Department of Corrections Form 695, "Inmate/Parolee Appeal Rejection Form."

**B. The Complaint Against Cry**

After receiving the denial of his request for an interview, Brodheim filed a separate complaint against Cry. In this complaint, Brodheim alleged that Cry "is unprofessional in his dealings with me and repeatedly attempts to infringe upon my 1st Amendment right to petition the government for redress of grievances." Specifically, Brodheim noted multiple occasions where Cry had told him he filed too many grievances, "like they're soup." As a staff complaint, the first level of review was bypassed, and the complaint was reviewed by Correctional Lieutenant B.C. Roszko, and a decision was signed by defendant Valadez, on behalf of Warden Ramirez-Palmer. As part of this review, Roskzo conducted a personal interview of both Brodheim and Cry. The decision denied Brodheim's appeal, as did a subsequent Director's Level Appeal issued on November 20, 2001. The Director's Level decision served to exhaust Brodheim's administrative remedies.

Between the date of the Director's Level Decision in November 2001 and April 18, 2006, Brodheim filed over 60 grievances with the Department of Corrections. This included seven staff complaints, three of which were against Cry (and were all denied).

**C. Cry's Memorandum**

The instant action was filed on March 19, 2002. On June 8, 2004, Cry sent a memorandum to his supervisor, Associate Warden Veal, "formally document[ing] a continued concern of harassment and fixation exhibited by Inmate Brodheim." In the memorandum, Cry stated that "Since his return to CMF, [Brodheim] has gradually turned his entire focus on litigation directed towards the Inmate 602 Appeals Coordinator's process and the Board of Prison Terms." Cry explained that his rejection of Brodheim's initial claim as untimely was a legal issue, and that he did not feel it was a "staff complaint appeal issue." Cry expressed a concern that he was "starting to

receive other appeals from other inmates involving these same allegations initiated by Inmate Brodheim." Cry noted that two inmates had informed him that Brodheim was "systematically inciting other inmates and assisting them to file 602 complaints utilizing these same disruptive tactics."

Cry's memorandum concluded with a recommendation that Brodheim be considered for a possible transfer out of CMF, noting a lack of restraining orders against Brodheim and generally questioning Brodheim's "psychiatric override" designation, which is what led to his placement in CMF. Cry noted that Brodheim's "major problem" was "his attitude of superiority above everyone else in levels of authority in CDC," and that he was "starting to make it difficult [for Cry] to perform [his] duties as the Appeals Coordinator."

In response to this memorandum, plaintiff was not transferred or disciplined. However, all appeals by Cry were subsequently assigned to the other Appeals Coordinator at CMF, R. Piazza.

## D.    The State Court Proceedings

On January 15, 2004, Brodheim filed a petition for a writ of habeas corpus in the Superior Court of California for the County of Solano. That petition was denied by the Superior Court on the basis that Brodheim had failed "to make a prima facie showing that the Appeals Coordinator engaged in misconduct by rejecting petitioner's prior appeals." Upon appeal of that decision, the state Court of Appeal denied the petition on the alternative ground that Brodheim had failed to exhaust his administrative remedies, noting that Brodheim could file a subsequent petition upon doing so.

On May 31, 2005, Brodheim filed a second habeas corpus petition in the Solano County Superior Court. The complaint was based on the claim that the CMF warden at the time, Warden Schwartz, was "infring[ing] upon petitioner's statu-

tory and regulatory rights to file a complaint alleging peace officer misconduct by permitting the very subject of such a complaint to screen, review, and 'reject' the complaint itself."

The factual allegations in that complaint discuss a grievance Brodheim brought in November, 2003, challenging "intentionally ambiguous language when preparing risk assessments of indeterminably sentenced prisoners for consideration by the Board of Prison Terms ('Board' or 'BPT') at parole consideration hearings." The CMF Appeals Coordinator (presumably Cry) rejected that grievance on both jurisdictional grounds and on the basis that it was untimely. Brodheim subsequently filed a staff complaint alleging misconduct by the CMF Appeals Coordinator in rejecting the grievance, and subsequent complaints alleging misconduct in the rejection of that staff complaint. Brodheim further alleged that Warden Schwartz failed to properly respond to his complaints, and wrote a memorandum that "criticized petitioner for his protected First Amendment activity." In addition to the writ, Brodheim sought declaratory relief and an order to show cause pursuant to Cal. Rules of Court 4.551(c)(1).

On December 12, 2005, the Superior Court issued a brief order denying the second petition. The court characterized Brodheim's allegation as one that "his statutory right to file a citizen's complaint against a correctional officer was being violated because Appeals Coordinator Cry had screened petitioner's inmate appeal directed against the appeals coordinator." Citing *People v. Duvall*, 9 Cal. 4th 464, 475 (1995), the court held Brodheim "failed to state a prima facie case for relief." Id.

## II.   PROCEDURAL BACKGROUND

Brodheim filed a motion for partial summary judgment on his First Amendment retaliation claims, and defendants filed a motion for summary judgment on all of Brodheim's claims. On September 24, 2007, the district court adopted the findings

and recommendations of the magistrate judge assigned to the case, granting defendants' motion for summary judgment in its entirety and denying Brodheim's motion for partial summary judgment. In so doing, the court found that (1) there was no adverse action taken in retaliation for Brodheim's exercise of his First Amendment rights; (2) "there was no evidence that a reasonable fact finder could rely upon to conclude that Cry's written warning had a chilling effect on the exercise of plaintiff's rights;" (3) the warning was justified by the "legitimate penological purpose in admonishing inmates as to the manner and tone they adopt with prison authorities;" (4) Brodheim's claims were barred by res judicata; and (5) supplemental jurisdiction over Brodheim's pendent state claims was inappropriate.

## III.   STANDARD OF REVIEW

We review an order granting summary judgment *de novo*, applying the same standard as the district court: "[W]hether, with the evidence viewed in the light most favorable to the non-moving party, there are no genuine issues of material fact, so that the moving party is entitled to a judgment as a matter of law." *San Diego Police Officers' Ass'n v. San Diego City Employees' Retirement Sys.*, 568 F.3d 725, 733 (9th Cir. 2009).

## IV.   ANALYSIS

### A.   Res Judicata

As an alternative basis for summary judgment, the district court ruled that Brodheim's claims were barred by the doctrine of res judicata. This was in error. First, the district court applied the incorrect standard in evaluating whether plaintiff's claims were precluded by the December 2005 California state court decision. Under 28 U.S.C. § 1738, federal courts are required to give state court judgments the preclusive effects they would be given by another court of that state. *Migra v.*

*Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 84 (1984); *Maldonado v. Harris*, 370 F.3d 945, 951 (9th Cir. 2004). However, the district court applied the standard used to analyze the preclusive effect of prior *federal* court judgments.

**[1]** California law holds a final judgment of a state court "precludes further proceedings if they are based on the same cause of action." *Maldonado*, 370 F.3d at 952. Unlike the federal courts, which apply a "transactional nucleus of facts" test, "California courts employ the 'primary rights' theory to determine what constitutes the same cause of action for claim preclusion purposes." *Id.*

Under this theory, "a cause of action is (1) a primary right possessed by the plaintiff, (2) a corresponding primary duty devolving upon the defendant, and (3) a harm done by the defendant which consists in a breach of such primary right and duty." *City of Martinez v. Texaco Trading & Transp., Inc.*, 353 F.3d 758, 762 (9th Cir. 2003), *citing Citizens for Open Access to Sand and Tide, Inc. v. Seadrift Ass'n*, 60 Cal. App.4th 1053, 1065 (1998). "[I]f two actions involve the same injury to the plaintiff and the same wrong by the defendant, then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery." *Eichman v. Fotomat Corp.*, 147 Cal. App.3d 1170, 1174 (1983), *quoted in San Diego Police Officers' Ass'n*, 568 F.3d at 734.

**[2]** The "causes of action" in the federal and state court actions here were distinct, and thus the state court decision did not preclude the federal action.[2] Brodheim's state court

---

[2]Appellants argue that any claims that Brodheim *could have* brought in his state court claim are barred by res judicata. However, under California law, not all claims that may have been brought in an earlier case are barred in a later action; rather only those that derive from the same primary right are precluded. *Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal. 4th 623, 641 (Cal. 2007).

suit challenged the fairness of having staff complaints against the Appeals Coordinator reviewed by the Appeals Coordinator. He claimed that this effectively deprived him of his statutory and regulatory rights to file a complaint by denying him any meaningful review. Brodheim's federal complaint, on the other hand, concerned specific acts which he claimed constituted retaliation for the exercise of his constitutional right to file a grievance, namely, the "warning" message and the subsequent transfer request. These acts, he alleged, harmed him by chilling the further exercise of his rights.

**[3]** The critical focus of primary rights analysis "is the harm suffered." *San Diego Police Officers Ass'n*, 568 F.3d at 734, *quoting Agarwal v. Johnson*, 25 Cal. 3d 932 (1970); *see also City of Martinez*, 353 F.3d at 762. The two harms here— lack of meaningful review, a procedural harm, and a retaliatory chilling of constitutional substantive rights—are distinct. They were caused at different times, by different acts, and by different actors. In the state action, the alleged harm was inflicted by the Warden in 2003, when he allowed Cry to review grievances Brodheim filed against Cry. In Brodheim's federal complaint, on the other hand, the actual alleged harm was inflicted by Cry himself when he placed the handwritten warning on Brodheim's interview request form in 2001.

**[4]** Because the claims involved different causes of action under the primary rights theory, we conclude the federal action was not barred by the state court's decision, and thus reverse the district court's contrary holding.

## B.    The Validity of Brodheim's Claim on the Merits

**[5]** "Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84 (1987); *see also Bell v. Wolfish*, 441 U.S. 520, 545 (1979). It is well-established that, among the rights they retain, prisoners have a First Amendment right to file prison grievances. *See Rhodes v. Robinson*, 408 F.3d 559,

566 (9th Cir. 2005); *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003). Retaliation against prisoners for their exercise of this right is itself a constitutional violation, and prohibited as a matter of "clearly established law." *See Rhodes*, 408 F.3d at 566; *Pratt v. Rowland*, 65 F.3d 802, 806 & n.4 (9th Cir. 1994).

In *Rhodes v. Robinson*, we set forth the five basic elements of a "viable claim of First Amendment retaliation"[3] in the prison context:

> (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

408 F.3d at 567-68. *See also Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). We also noted that a plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm. *Rhodes*, 408 F.3d at 568 n. 11.

The district court found that no genuine issue of material fact existed as to four of these elements: The existence of an adverse action, the causation for the adverse action, the chilling of Brodheim's rights, and the relationship of any action to a legitimate correctional goal. We find the district court erred on each of these four grounds.

---

[3]Although *Rhodes* concerned a district court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim, the elements of the claim are the same on a motion for summary judgment. On summary judgment, however, the plaintiff must demonstrate there is a triable issue of material fact on each element of his claim, as opposed to merely alleging facts sufficient to state a claim.

### 1. Adverse Action

The district court found there was insufficient evidence to support a finding that Cry's handwritten statement constituted an adverse action. In doing so, the court acknowledged that a threat of discipline or transfer was sufficient to state a claim for retaliation, but held that, on a motion for summary judgment, a plaintiff "must present evidence showing that such a threat to transfer for the exercise of First Amendment rights actually occurred," and that Brodheim failed to do so. This was the incorrect standard to apply.

**[6]** As we have stated multiple times, "a retaliation claim may assert an injury no more tangible than a chilling effect on First Amendment rights." *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001), *citing Hines v. Gomez*, 108 F.3d 265, 269 (9th Cir. 1997). *See also Burgess v. Moore*, 39 F.3d 216, 218 (8th Cir. 1994) ("[A] threat of retaliation is sufficient injury if made in retaliation for an inmate's use of prison grievance procedures."). In *Rhodes* itself, we made this clear by noting that an allegation that a person of ordinary firmness would have been chilled is sufficient to state a retaliation claim, and that, "since harm that is more than minimal will almost always have a chilling effect [, a]lleging harm *and* alleging the chilling effect would seem under the circumstances to be no more than a nicety." 408 F.3d at 568, n. 11 (emphasis in original). Thus, the mere *threat* of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect.

The district court and the defendants, however, contend that a threat of harm must be explicit and specific to constitute an adverse action. Thus, they argue, the threat here was not an adverse action because it failed to explicitly state that discipline, transfer, or some other negative result would occur as a consequence for failing to comply.

**[7]** Outside the prison context, we have never held that a plaintiff must establish an explicit threat to prevail on a retali-

ation claim. *See, e.g., Berry v. Dep't of Soc. Servs.*, 447 F.3d 642, 655 (9th Cir. 2006) (noting implicit threat of adverse action sufficient to establish Title VII prima facie case); *N.L.R.B. v. Island Film Processing Co., Inc.*, 784 F.2d 1446, 1451 (9th Cir. 1986) ("Implied threats of retaliation suffice to taint a [labor representation] election."); *see also Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028 (2005) (holding that implied threat of termination plus pattern of negative treatment may be adverse employment action for sex discrimination retaliation claim). We see no reason why a different standard should apply in this setting. Thus, Brodheim need not need establish that Cry's statement contained an explicit, specific threat of discipline or transfer if he failed to comply. As the Second Circuit held in a related context, the question for the district court to ask is whether "the record, taken in the light most favorable to the plaintiff, reveals statements by the defendant that a reasonable factfinder could . . . interpret as intimating that some form of punishment or adverse regulatory action would follow." *Okwedy v. Molinari*, 333 F.3d 339, 343 (2d Cir. 2003) (per curiam) (internal marks omitted).

**[8]** Under this standard, the record before the district court was sufficient to establish a genuine issue of material fact as to whether Cry's warning constituted an adverse action. By its very nature, a statement that "warns" a person to stop doing something carries the implication of some consequence of a failure to heed that warning. There were a number of things that Cry, as a corrections officer, could have done if Brodheim failed to comply with his warning that would have had a negative effect. In addition to the words of the warning itself, the district court also had before it the 2004 memorandum sent by Cry to the Warden, which stated that Brodheim's continued use of the grievance system was indeed the motivating factor for his recommendation that Brodheim be transferred. While this memorandum was not submitted until after the commencement of this suit, it is circumstantial evidence that a jury could view as supporting Brodheim's contention

the warning was a threat of transfer or disciplinary action if he was not "careful" as to what he wrote in his grievances.

**[9]** The power of a threat lies not in any negative actions eventually taken, but in the apprehension it creates in the recipient of the threat. Based on the record before the district court, a genuine issue of material fact exists as to whether Cry's statement intimated that some form of punishment or adverse regulatory action would follow a failure to comply. Thus, we reverse the district court's finding that Brodheim produced inadequate evidence of an adverse action.

## 2. Causation

**[10]** To prevail on a retaliation claim, a plaintiff must show that his protected conduct was "the 'substantial' or 'motivating' factor behind the defendant's conduct." *Sorrano's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989). To show the presence of this element on a motion for summary judgment, Brodheim need only "put forth evidence of retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of material fact as to [Cry's] intent" in issuing the warning. *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003). Even if there is a dispute as to whether Brodheim's "disrespectful language" or the grievance as a whole was the motivating factor for Cry's warning,[4] we have previously held that disrespectful language in a prisoner's grievance is itself protected activity under the First Amendment. *Bradley v. Hall*, 64 F.3d 1276, 1281-82 (9th Cir. 1995) (holding that "prison officials may not punish an inmate merely for using 'hostile, sexual, abusive or threatening' language in a written

---

[4]Appellees argue that the comment was not in response to the "grievance" (the 602 form), but only the "interview request form." The applicability of the constitutional right to redress of grievances does not hinge on the label the prison places on a particular complaint. It is clear that Brodheim's interview request — a challenge to an adverse ruling on his complaint — was part of the grievance process, and was thus protected activity.

grievance."). It is thus undisputed that the warning was motivated by Brodheim's protected conduct, and we reverse the district court's contrary finding.

### 3.   Chilling

**[11]** The district court examined several occasions on which Brodheim claims his exercise of the right to file grievances was "chilled," as well as the number of grievances that Brodheim filed after the incident, and concluded that Brodheim failed to produce sufficient evidence of such chilling. However, this focus on whether or not the record showed Cry was actually chilled was incorrect. In *Rhodes*, we explicitly held that an objective standard governs the chilling inquiry; a plaintiff does not have to show that "his speech was actually inhibited or suppressed," but rather that the adverse action at issue "would chill *or* silence a person of ordinary firmness from future First Amendment activities." 408 F.3d at 568-69, *quoting Mendocino Enviro. Center v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (emphasis in original). To hold otherwise "would be unjust" as it would "allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity." *Id.* at 569.

**[12]** We cannot say that, as a matter of law based upon the record before us, Brodheim has failed to meet this objective standard. A reasonable person may have been chilled by Cry's warning. We therefore reverse the finding of the district court as to chilling.

### 4.   Legitimate Penological Interest

**[13]** To prevail on a retaliation claim, a prisoner must show that the challenged action "did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005). The district court appeared to conclude that Cry's action "reasonably advance[d]," *id.*, the legitimate

penological goal of "prohibiting disrespectful language." This is contrary to our established precedent.

In *Bradley v. Hall*, 64 F.3d 1276 (9th Cir. 1995), we considered a challenge to Oregon correctional regulations which prohibited the use of "hostile, sexual, abusive, or threatening language." 64 F.3d at 1278. In invalidating these "disrespect regulations," we acknowledged that they furthered several legitimate penological interests, but "balance[d] the importance of the prisoner's infringed right against the importance of the penological interest served by the rule" to find that, as applied to the content of formal written grievances, the rule impermissibly "substantially burdened" prisoners' right of access to the courts. *Id.* at 1280-81.

The Supreme Court explicitly disapproved of our "balancing" method of analysis, though not the holding of *Bradley*, in *Shaw v. Murphy*, 532 U.S. 223 (2001). There, the Supreme Court reaffirmed that the four factors set forth in *Turner v. Safley*, 482 U.S. 78 (1987), are the only factors a court is to consider in determining whether a proffered legitimate penological interest is reasonably related to a regulation which infringes on a prisoner's constitutional right. The Court re-elucidated these factors:

> First and foremost, "there must be a 'valid, rational connection' between the prison regulation and the legitimate [and neutral] governmental interest put forward to justify it." If the connection between the regulation and the asserted goal is "arbitrary or irrational," then the regulation fails, irrespective of whether the other factors tilt in its favor. In addition, courts should consider three other factors: the existence of "alternative means of exercising the right" available to inmates; "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and "the absence of ready

alternatives" available to the prison for achieving the governmental objectives.

532 U.S. at 228, *quoting Turner* (internal citations omitted); *see also Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008) (noting *Turner* factors). A balancing inquiry, the Court noted, would lead courts to "unnecessarily perpetuat[e]the involvement of the federal courts in affairs of prison administration." 532 U.S. at 230, *quoting Turner*, 482 U.S. at 89.

   **[14]** Removing the balancing step from our analysis, and solely applying the *Turner* factors, we reach the same result as the *Bradley* court. In *Bradley*, we found that the policy at issue failed to meet the first *Turner* factor of the connection between the valid interest and the regulation at issue. The court stated:

> We of course acknowledge the prison's valid interest in the peaceable operation of the prison through the insistence on respect, rather than through violent confrontation. However, the link between this important purpose and the disrespect rules as applied to formal written grievances is weak. The director and his experts argue that to permit the utterance of disrespectful language in any forum at any time would result in a total breakdown of prison security and discipline. Other courts that have addressed this argument in similar contexts have rejected it. We agree with these courts that such absolutist arguments for enforcement of disrespect rules in every communication public and private overstate their substantial importance.

64 F.3d at 1281 (citations omitted). The reasoning applies equally in this case; there is no indication that language in a written complaint like Brodheim's posed such a substantial threat to security and discipline in CMF.

The district court distinguished this case from *Bradley* by seizing on dicta that stated that, in that case, the corrections department's "legitimate security concerns would be largely served by procedures that require grievances to be in writing and shield those prison officials who are in direct contact with the inmates from reading any insulting remarks that might be contained in those grievances." 64 F.3d at 1281. The district court commented that such an alternative was impossible in this circumstance, because it was Cry "himself who was the subject as well as the intended reader of plaintiff's complaint, and therefore could not be 'shielded' as *Bradley* proposed." This is inconsequential for several reasons. First, immediately after the passage quoted by the district court, we explicitly disclaimed that we were mandating such a "shielding" alternative; rather, it was merely one of multiple "obvious, simple alternatives that both accommodate the prisoner's right to file a grievance and prevent any open expression of disrespect or any disrespectful communication between prisoner and guard or between prisoner and prisoner." Second, it was indeed possible to "shield" Cry from these complaints,[5] by developing a system by which grievances about a specific individual are not processed by that individual. This is in fact what happened in 2004 when Brodheim's grievances were assigned to a different appeals coordinator. Finally, in no way is the fourth *Turner* factor, the presence or absence of alternative means of achieving the stated objective, dispositive.[6]

Examining the other *Turner* factors, we find that the warning was insufficiently related to legitimate penological interests. It does not appear that there was any other way for Brodheim to exercise his grievance rights other than via the written grievance system. As to the other factor, the effect

---

[5]Moreover, as discussed above, plaintiff's state court suit was explicitly premised on the failure of the Warden to establish such a shielding system.

[6]The district court also balanced Brodheim's infringed right against the defendants' penological interest, to find the latter outweighed the former. This was erroneous in light of *Shaw*.

accommodation of the asserted right would have on the corrections system, we explained in *Bradley*:

> It takes little imagination to structure a grievance system and regime of disrespect rules that would make a prisoner's statements in a complaint or grievance invisible to all those involved in the daily operations of the prison, alleviating any security concern. A prisoner's statement in a grievance need not have any more impact on prison security through the maintenance of respect than the prisoner's unexpressed thoughts.

64 F.3d at 1281.

**[15]** We stand by this statement today, and hold that Cry's warning of Brodheim cannot escape constitutional scrutiny by citing a legitimate penological interest. Accordingly, we reverse the district court's finding that a legitimate penological interest barred plaintiff's claim.

Since we reverse the district court on each of the alternative grounds on which it granted summary judgment for defendants, the entire grant of summary judgment is reversed. Since the district court declined to exercise its discretion to exercise supplemental jurisdiction over Brodheim's state law claims solely on the basis of summary judgment on the federal claims, these claims are also reinstated.

## C.    Brodheim's Motion for Partial Summary Judgment

Brodheim also appeals the denial of his motion for partial summary judgment. Since a denial of a motion for summary judgment is generally not a final order, it is therefore not generally appealable. *Jones-Hamilton Co. v. Beazer Materials & Services, Inc.*, 973 F.2d 688, 693-94 (9th Cir. 1992). However, the Court of Appeals "may review a denial of summary judgment where it is accompanied by a final order disposing

of all issues before the district court and where the record has been sufficiently developed to support meaningful review of the denied motion." 973 F.2d at 694 n. 2.

**[16]** As discussed above, genuine issues of material fact remain in dispute as to Brodheim's retaliation claim. Namely, it is a matter of disputed fact as to whether the warning and surrounding circumstances were sufficiently threatening to constitute an adverse action, and whether a "person of ordinary firmness" would have had his or her First Amendment rights chilled by the conduct of appellees. Accordingly, we affirm the district court's denial of Brodheim's motion for partial summary judgment.

## V. CONCLUSION

The determination of an individual prisoner in persisting in filing grievances in spite of a threat of retaliation does not indicate he has not suffered a constitutional wrong. Even if the threat or warning is general and not carried out, a prisoner may prevail on a First Amendment claim if that threat would chill the protected activity of an ordinary prisoner.

Since Brodheim's claim was not barred on res judicata grounds, and he has produced sufficient evidence to create a genuine issue of material fact as to each of the required elements of his prison retaliation claim, we reverse the district court on each of its alternative grounds for granting summary judgment for defendants, affirm the district court's denial of plaintiff's motion for partial summary judgment, and remand the case for further proceedings.

**REVERSED in part, AFFIRMED in part, and REMANDED.** Costs on appeal are awarded to Brodheim.

BEA, Circuit Judge, concurring in part and concurring in the judgment:

I agree with the majority opinion except for its treatment of the prison's legitimate penological interest. To my mind, the majority's holding that there is no legitimate penological interest in admonishing prisoners to be more respectful in future written grievances is unnecessary to the resolution of the case. If the majority opinion made the exact opposite holding, that there is such a legitimate penological interest, summary judgment would still be in error. This is because a rational trier of fact could find, based on Cry having warned Brodheim to "be careful what you write, request on this form," that Cry retaliated against Brodheim for *either* being disrespectful in the grievance, *or* for having filed the grievance itself. Because there is no legitimate penological interest in warning prisoners not to file grievances, a trial would still be necessary to resolve the issue of Cry's retaliatory motive even if the majority held there was no penological interest in admonishing prisoners to be more respectful. Therefore, because the district court erred by granting summary judgment to defendants no matter which way we decide this issue, it is unnecessary to decide it. However, I agree that the district court erred by granting summary judgment to the defendants, so I concur.