**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

APR 25 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| THOMAS W.S. RICHEY, | No. 17-35032 |
| Plaintiff-Appellee, | D.C. No. 3:12-cv-05060-BHS |
| v. | |
| D. DAHNE, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Western District of Washington
Benjamin H. Settle, District Judge, Presiding

Argued and Submitted March 13, 2018
Seattle, Washington

Before:  W. FLETCHER and GOULD, Circuit Judges, and EZRA,** District Judge.

Thomas Richey, a Washington state prisoner, filed an internal grievance complaining about the actions of a prison guard.  The grievance included rude comments about the guard's weight, including describing her as "extremely

---

\*       This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*       The Honorable David A. Ezra, United States District Judge for the District of Hawaii, sitting by designation.

obese." Dennis Dahne, an official charged with handling grievances, took issue with parts of the grievance and told Richey to rewrite the grievance to eliminate the objectionable commentary. Richey submitted a "rewrite" that kept the rude comments, and that resulted in the facts that generated this lawsuit.

Dahne did not process the rewritten grievance still containing the offensive language about the guard's weight, and the grievance was subsequently considered to be "administratively withdrawn," which meant that it would not be processed.

Richey sued for violation of his First Amendment right to petition and for retaliation for exercising his rights under the First Amendment.[1] The district court granted summary judgment to Richey on the right to petition claim, and denied summary judgment to Dahne on the retaliation claim, holding that there were material questions of fact related to that claim.

Dahne appeals, arguing that he is entitled to qualified immunity on both claims. We affirm the district court's grant of summary judgment to Richey on his right to petition claim, but reverse the district court on qualified immunity grounds on his retaliation claim.

1.    Under the First Amendment, speech is protected unless the speech falls under one of a few narrowly defined categories of unprotected speech such as

---

[1] We previously reviewed this case at the motion to dismiss stage, holding that Richey had stated a plausible claim for relief. *Richey v. Dahne*, 624 F. App'x 525 (9th Cir. 2015).

fighting words, defamation, or obscenity. *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382– 84 (1992). We have previously held that "disrespectful language in a prisoner's grievance is itself protected activity under the First Amendment." *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (citing *Bradley v. Hall*, 64 F.3d 1276, 1281–82 (9th Cir. 1995)). But to say that a category of speech is protected does not mean that all governmental limits on such speech are unconstitutional. In *Turner v. Safley*, the United States Supreme Court held that a prison regulation that restricts inmates' constitutional rights could be constitutionally sound if it "is reasonably related to legitimate penological interests." 482 U.S. 78, 89 (1987). The standard under *Turner* requires that a valid regulation must (1) be content neutral, (2) logically advance proper goals such as institutional security and safety, and (3) not be an exaggerated response in relation to those goals. *Id*. at 93. The Supreme Court later clarified that a prison regulation is considered to be content neutral if its purpose is "unrelated to the suppression of expression." *Thornburgh v. Abbott*, 490 U.S. 401, 415 (1989) (quoting *Procunier v. Martinez*, 416 U.S. 396, 413 (1974)).

In *Brodheim* we held squarely that no legitimate penological interest is served by prison rules prohibiting disrespectful language in grievances. *Brodheim*, 584 F.3d at 1273. We reasoned that grievances were easy to insulate from other prisoners and from those prison officials who are the target of the grievance, so

3

that disrespectful language in a grievance did not raise any substantial security concern. *Id*. "A prisoner's statement in a grievance need not have any more impact on prison security through the maintenance of respect than the prisoner's unexpressed thoughts." *Id.* (quoting *Bradley* 64 F.3d at 1281).

Dahne contends that *Brodheim* clearly established only that it would be unconstitutional to punish a prisoner because of the content of a grievance, and not that it was unconstitutional to refuse the grievance because of that content. We reject this contention. The holding of *Brodheim* is not as narrow as Dahne contends. While it is true that *Brodheim* involved a warning or threat against a prisoner because of the content of a grievance, limiting *Brodheim* to only those types of cases would require that we ignore the *Brodheim* court's reasoning, and that we disregard the broader First Amendment framework under *Turner*. Instead, we consider that a correct reading of the scope of the holding in *Brodheim* is that rules prohibiting disrespectful language do not serve a legitimate penological interest in the special context of prison grievances. Under the *Turner* framework, a prison may constrain the expression of prisoners for a non-content-based legitimate penological reason, such as avoiding hostilities or potential violence. But absent such a legitimate penological reason, content-based limitation of a prisoner's expression is unconstitutional. Prisoners, just like those on the outside, have and value their First Amendment rights.

4

We clarify, however, that a prison official merely requesting that a prisoner rewrite a grievance is not a First Amendment violation. The prison could and did have valid grounds to make such a request in the interest of maintaining good relations between prisoners and guards. But, the violation here occurred when Dahne refused to allow the grievance to proceed through the administrative process after Richey did not rewrite it in a way that satisfied Dahne's sense of propriety. Functionally, allowing curtailment of the prison's grievance process in this way would mean that only a grievance that conformed to Dahne's personal conception of acceptable content could get meaningful review. That is the sort of content-based discrimination that runs contrary to First Amendment protections.

We also stress that the holding of *Brodheim* relates only to the narrow category of cases dealing with prison grievances. Nothing about *Brodheim* or our holding today should be construed as suggesting that prisoners have a right to publicly use disrespectful language in the broader prison environment. Such actions would plausibly raise legitimate penological concerns related to the security of guards and the desirability of maintaining harmonious relationships between guards and prisoners to the extent possible. Hence prisons will often be justified in curtailing that sort of public disrespectful behavior outside of the prison grievance process.

2.	Turning to Richey's retaliation claim, we hold that the district court erred by not granting summary judgment to Dahne on qualified immunity grounds. In *Rhodes v. Robinson*, we held that a retaliation claim has five elements:

> (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

408 F.3d 559, 567–68 (9th Cir. 2005). Neither our prior case law nor that of the Supreme Court has clearly established that merely refusing to accept a grievance for processing is a retaliatory adverse action. Richey claims that under *Brodheim* an "adverse regulatory action" can count as a retaliatory adverse action. And he argues that refusing to process the grievance is an adverse regulatory action. However, in context in *Brodheim* the "adverse regulatory action" language refers to some additional punitive action or threat of punitive action over and above merely refusing to accept the grievance. *Brodheim*, 584 F.3d at 1270–71. Because of the lack of case law addressing the issue of whether not processing a grievance could be viewed as retaliation, it is not the case that "every reasonable official would have understood" that refusing a grievance violates a prisoner's right against retaliation. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). We reverse the district court and grant summary judgment for Dahne on Richey's retaliation claim on qualified immunity grounds.

6

**AFFIRMED IN PART AND REVERSED IN PART.**