Vincent C. BRUCE, Plaintiff–Appellant,

v.

Eddie YLST; G.E. Harris; P.H. Carrillo; P.E. Tingey; A. Godfrey; D. Marriott, Correctional Counselor; M. Coziahr, Lieutenant; L. Washington, Jr., Correctional Officer; Robert Ayers, Jr., Warden; J. McGrath; T. Schwartz, Associate Warden; D. Smith, Captain; B.J. O'Neill, Captain; Raul. J. Dillard, Captain; Gary H. Wise, Lieutenant; M. Piland; G.M. Ater; K. Burns; M. Johnston; S.C. Wohlwend; Terhune; Padilla, Defendants–Appellees.

No. 01–17527.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 2003.

Filed Dec. 10, 2003.

Kelly A. Woodruff, Farella Braun & Martel LLP, San Francisco, CA, for the plaintiff-appellant.

Anya M. Binsacca, Attorney General's Office, San Francisco, CA, for the defendants-appellees.

Before THOMPSON, TROTT, Circuit Judges, and WEINER,* Senior District Judge.

TROTT, Circuit Judge.

## I

Vincent C. Bruce appeals the district court's entry of summary judgment in favor of defendant prison officials in his 42 U.S.C. § 1983 action. He argues that his submission to the court raised genuine issues of material fact with respect to his claims that when prison officials validated him as a prison gang affiliate, they did so in retaliation for his jailhouse lawyering activities and with insufficient evidence. This, he argues, violated his Fourteenth Amendment rights to due process and equal protection, and his First Amendment right to file prison grievances.

The district court had jurisdiction pursuant to 28 U.S.C. § 1331; this court has jurisdiction pursuant to 28 U.S.C. § 1291.

The district court granted defendants' motion for summary judgment on all three claims. We affirm the district court as to the due process and equal protection claims. As to the First Amendment retaliation claim, we reverse and remand for further proceedings consistent with this opinion.[1]

## II

## BACKGROUND

Bruce is serving a life sentence in the California penal system. He alleges, as described below, that he has been investigated for prison gang affiliation on three occasions.

When Bruce was transferred to North Kern State Prison in November, 1995, an investigation of his alleged association with the Black Guerilla Family (BGF) was undertaken by the Institutional Gang Investigator (IGI). The IGI found the following evidence insufficient to validate Bruce as a BGF member: a report from the Los Angeles Sheriff's Department dated August 23, 1995, a probation report dated November 2, 1995, and information from a confidential informant who identified Bruce as a BGF "shot caller." In March 1996, Bruce was transferred to Pelican Bay State Prison, where on April 24, 1996, he was again advised that this evidence was insufficient to conclude he was a BGF member.

In August 1996, he was transferred to Salinas Valley State Prison. Two years later, he was placed in administrative segregation for one month for committing a battery on another inmate. During that time, Bruce filed a series of grievances

---

* Hon. Charles R. Weiner, Senior District Judge for Eastern Pennsylvania sitting by designation.

1. The district court also stayed discovery, an order we do not address directly. We note only that remand for further proceedings necessitates that the stay be lifted.

regarding inadequate prison conditions, on behalf of himself and other inmates. When his one month term expired, he was retained in administrative segregation pending an investigation of his alleged affiliation with the BGF.

On August 3, 1998, Bruce met with IGI Washington who informed Bruce he was being validated as a BGF member. Washington allegedly told Bruce he was being validated, on the orders of "higher-ups," in retaliation for his having filed the grievances. The evidence used to make the validation was the same evidence that had been found to constitute insufficient evidence of gang membership in the two prior investigations. On August 21, 1998, Bruce was validated by Senior Special Agent S.C. Wohlwend as an associate of the BGF. The Institutional Classification Committee then determined that Bruce would be assessed an indeterminate confinement at the Pelican Bay Security Housing Unit. Thereafter, Bruce exhausted his appeals of the validation through the California Department of Corrections prior to bringing his § 1983 action.

## III

## DISCUSSION

### A. Standard of Review

■ We review the district court's grant of summary judgment de novo. *Barnett v. Centoni,* 31 F.3d 813, 815 (9th Cir.1994). Summary judgment is only appropriate if the evidence, read in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c).

### B. Due Process Claim

■ Bruce claims he was denied due process because prison officials did not

have sufficient evidence to validate him as a member of the BGF prison gang. This due process claim is subject to the "some evidence" standard of *Superintendent v. Hill,* which the district court properly cited and applied. 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). That standard, and not the heightened standard of *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), applies to this case because

> California's policy of assigning suspected gang affiliates to the Security Housing Unit is not a disciplinary measure, but an administrative strategy designed to preserve order in the prison and protect the safety of all inmates. Although there are some minimal legal limitations, *see, e.g., Toussaint v. McCarthy,* 801 F.2d 1080 (9th Cir.1986) ..., the assignment of inmates within the California prisons is essentially a matter of administrative discretion.

*Munoz v. Rowland,* 104 F.3d 1096, 1098 (9th Cir.1997). Because defendants complied with *Toussaint*'s requirements that prison officials provide the inmate with "some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation," the relevant issue is whether there was "some evidence" to support Bruce's validation. 801 F.2d at 1099.

■ Under *Hill,* we do not examine the entire record, independently assess witness credibility, or reweigh the evidence; rather, "the relevant question is whether there is any evidence in the record that could support the conclusion." 472 U.S. at 455–56, 105 S.Ct. 2768. Clearly, there was some evidence in the record to support the conclusion that Bruce had ties to the BGF. This included the Los Angeles Sheriff's Department report that Bruce was an associate of the BGF, as well

as the Venice Shoreline Crips, a probation report noting that Bruce's codefendant on his underlying conviction was also validated as a member of the BGF, and the statement of the confidential prison informant.

The district court correctly noted that under the "some evidence" standard, any of these three pieces of evidence would have sufficed to support the validation because each has sufficient indicia of reliability. *See Toussaint v. McCarthy*, 926 F.2d 800, 803 (9th Cir.1990). Given that some evidence supported the validation decision, the district court properly entered summary judgment in favor of defendant prison officials on Bruce's due process claim.

### C. Equal Protection Claim

■ Bruce's equal protection claim was also properly dismissed on summary judgment. Bruce argues that the state denied him the same procedures it affords other suspected gang affiliates because of his jailhouse lawyering activity. Although the Equal Protection Clause ensures similarly situated persons are treated alike, it does not ensure absolute equality. *U.S. v. Devlin*, 13 F.3d 1361, 1363 (9th Cir.1994) (citing *Ross v. Moffitt*, 417 U.S. 600, 609, 612, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974)).

■ Because, as discussed above, Bruce was afforded the process he was due, the same process all gang affiliates are due, any purported difference in treatment does not rise to the level of an equal protection violation.

### D. Retaliation Claim

■ Bruce alleges that prison officials violated his First Amendment right to file prison grievances when they validated him as a BGF member in retaliation for his filing of several grievances. As we recognized in *Hines v. Gomez*, a chilling effect on a prisoner's First Amendment right to

file prison grievances is sufficient to raise a retaliation claim. 108 F.3d 265, 269 (9th Cir.1997) (citing *Sandin v. Conner*, 515 U.S. 472, 487, fn. 11, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)).

### 1. Merits

■ "A prisoner suing prison officials under section 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." *Barnett*, 31 F.3d at 816 (citing *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir.1985)).

#### *Retaliatory Motive*

■ Bruce put forth evidence of retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of material fact as to the prison officials' intent in initiating his validation investigation.

First, Bruce offered the suspect timing of the validation—coming soon after his success in the prison conditions grievances. In *Pratt v. Rowland*, we recognized that "timing can properly be considered as circumstantial evidence of retaliatory intent." 65 F.3d 802, 808 (9th Cir.1995).

Second, Bruce raises the fact that the same evidence cited by the IGI to validate him was previously determined to be insufficient to conclude he was a BGF member. This evidence, while not conclusive of retaliatory motive, tends to show that the validation was not motivated by any recent gang activity on Bruce's part.

Additionally, Bruce clearly asserted facts in his Declaration in Opposition to the Motion for Summary Judgment that, if true, show that IGI Washington's accusation of gang activity was improperly moti-

vated. Specifically Bruce alleges the following:

> I asked Washington if he had contacted the IGI's at North Kern and Pelican Bay. He responded, "No. And I don't have to." Washington then stated that I had "pissed off higher-ups" with my "complaints and protests," and the last incident "where you acted as spokesperson for other prisoners' complaints was the last straw." Washington then stated that Lt. Coziahr and himself were ordered by these "higher-ups to validate you." ... Washington stated also to me, "The higher-ups want you validated to make an example out of you to discourage similar complaints and protests ... the bosses don't care for organized complaining.... Your family filing a complaint to the Warden wasn't a good idea either." This is "exactly the sort of thing that pisses off the higher-ups." Washington then stated "the Warden called me this morning asking about your validation." ... I asked Washington what evidence was being used against me, he refused to say except to state, "it was already in your c-file when it was sent to our office."

These statements combined with the suspect timing of the investigation and the fact that stale evidence was used, certainly raise a triable issue of ·fact regarding whether the motive behind the validation was retaliatory.

### Legitimate Penological Goals

In *Pratt*, the court made clear that the prisoner plaintiff "bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains." 65 F.3d at 806.

The state argues that because there was "some evidence" that Bruce was a BGF affiliate, and because the gang validation procedures serve the valid penological pur-

pose of security and safety, summary judgment was proper. In *Hines,* however, we held that the "some evidence" standard of Hill did not apply to retaliation claims. 108 F.3d at 269. The "some evidence" standard applies only to due process claims attacking the result of a disciplinary board's proceeding, not the correctional officer's retaliatory accusation. *Id.*

 It is clear, and Bruce concedes, that prisons have a legitimate penological interest in stopping prison gang activity. *See Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Madrid v. Gomez,* 889 F.Supp. 1146, 1240–1241 (N.D.Cal.1995). But, if, in fact, the defendants abused the gang validation procedure as a cover or a ruse to silence and punish Bruce because he filed grievances, they cannot assert that Bruce's validation served a valid penological purpose, even though he may have *arguably* ended up where he belonged. *See Rizzo v. Dawson,* 778 F.2d 527, 532 (9th Cir.1985) ("[P]laintiff has alleged that [prison official] Stocker's actions were retaliatory and were arbitrary and capricious. He has thereby sufficiently alleged that the retaliatory acts were not a reasonable exercise of prison authority and that they did not serve any legitimate correctional goal.").

This comports with other circuits holding that prison officials may not defeat a retaliation claim on summary judgment simply by articulating a general justification for a neutral process, when there is a genuine issue of material fact as to whether the action was taken in retaliation for the exercise of a constitutional right. *See Cornell v. Woods,* 69 F.3d 1383, 1388–89 (8th Cir.1995); *Woods v. Smith,* 60 F.3d 1161, 1165 (5th Cir.1995); *Smith v. Maschner,* 899 F.2d 940, 948–49 (10 Cir.1990).

Because Bruce raised a jury issue that the stated penological goals were not legit-

imate, summary judgment was not appropriate on the retaliation claim.

### Damages

██ Bruce prays for declaratory, injunctive, and monetary relief. Specifically, Bruce asks this court to declare that the evidence relied upon in his validation is unreliable and does not establish gang membership, and that as a matter of due process the prison officials should be enjoined from relying on this information in the future.

██ In fashioning a remedy, federal courts must remember that the duty to protect inmates' constitutional rights does not confer the power to manage prisons or the capacity to second-guess prison administrators, for which we are ill-equipped. *Touissant v. McCarthy (Touissant IV),* 801 F.2d 1080, 1086 (9th Cir.1986). "[T]he relief ordered by federal courts must be consistent with the policy of *minimum intrusion into the affairs of state prison administration." Id.* (emphasis added).

On these facts, monetary damages, nominal or otherwise, may be appropriate if Bruce should prevail at trial. But he is not entitled to declaratory or injunctive relief on the record before us because it is not the purview of the federal courts to interfere directly with prison administration in the manner he asks. The prison cannot be foreclosed from using the same evidence in the future in connection with his continuing imprisonment. Nor will we provide any declaration regarding Bruce's affiliation or non-affiliation with the BGF.

### 2. Qualified Immunity

██ In two footnotes, the district court stated that defendants were entitled to qualified immunity. We hold that as to the retaliation claim, defendants are not entitled to qualified immunity.

██ "Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jeffers v. Gomez,* 267 F.3d 895, 910 (9th Cir.2001) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). As this court pointed out in *Pratt,* "the prohibition against retaliatory punishment is 'clearly established law' in the Ninth Circuit, for qualified immunity purposes." 65 F.3d at 806 (citing *Schroeder v. McDonald,* 55 F.3d 454, 461 (9th Cir.1995)).

## IV

## CONCLUSION

The district court improperly dismissed Bruce's retaliation claim on summary judgment. Viewed in the light most favorable to him, there were genuine issues of material fact relating to the prison officials' intent in investigating and ultimately validating him as a member of the Black Guerrilla Family prison gang. Prison officials cannot use a proper and neutral procedure in retaliation for a prisoner's exercise of his constitutional rights. While First Amendment rights are curtailed in prison, they are not lost. As Bruce's success in his grievances shows, there must be avenues for prisoners to redress the wrongs or inadequacies of their state jailors.

The parties shall bear their own costs.

AFFIRMED in part, REVERSED and REMANDED in part.