**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LAMONT SHEPARD,
  *Plaintiff-Appellant*,

v.

T. QUILLEN; J. WISE,
  *Defendants-Appellees.*

No. 13-15554

D.C. No.
1:09-cv-00809-BAM

OPINION

Appeal from the United States District Court
for the Eastern District of California
Lawrence J. O'Neill, District Judge, Presiding

Argued and Submitted August 12, 2015
San Francisco, California

Filed October 26, 2016

Before: Alex Kozinski and Richard C. Tallman, Circuit
Judges, and Douglas L. Rayes,[*] District Judge.

Opinion by Judge Kozinski;
Dissent by Judge Tallman

---

[*] The Honorable Douglas L. Rayes, District Judge for the U.S. District Court for the District of Arizona, sitting by designation.

## SUMMARY[**]

### Prisoner Civil Rights

The panel reversed the district court's summary judgment in favor of a California corrections lieutenant in a California state prisoner's section 1983 action alleging that he was transferred to administrative segregation in retaliation for reporting that a corrections officer used excessive force against him; and, in a memorandum disposition filed concurrently with the opinion, affirmed a jury verdict on his claim that the corrections officer used excessive force.

Reversing the grant of summary judgment, the panel rejected Corrections Lieutenant Wise's claim that California prison regulation Cal. Code Regs. tit. 15, § 3335(a), required him to transfer plaintiff to administrative segregation as soon as plaintiff alleged that he was assaulted by another corrections officer. The panel held that plaintiff established a genuine issue of material fact as to whether Wise retaliated against him. Plaintiff had also shown that Wise was not entitled to qualified immunity at this stage.

In a memorandum disposition filed concurrently with its opinion, the panel affirmed a jury verdict in favor of corrections officer Quillen on plaintiff's excessive force claim.

Dissenting, Judge Tallman stated that Lieutenant Wise's decision to transfer plaintiff into administrative segregation

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

fell squarely within the range of conduct that is protected by qualified immunity.

---

## COUNSEL

Javier Serrano (argued) and George C. Harris, Morrison & Foerster LLP, San Francisco, California, for Plaintiff-Appellant.

Misha Igra (argued), Supervising Deputy Attorney General; Kamala D. Harris, Attorney General of California; Jonathan L. Wolff, Senior Assistant Attorney General; Thomas S. Patterson and Vickie P. Whitney, Supervising Deputy Attorneys General; Office of the California Attorney General, Sacramento, California; for Defendants-Appellees.

---

## OPINION

KOZINSKI, Circuit Judge:

We consider whether a prison official may place an inmate in administrative segregation for reporting officer misconduct.

## FACTS[1]

California Corrections Officer Quillen was doing rounds when recently transferred inmate Lamont Shepard refused to identify himself. Quillen and another officer removed Shepard from his cell and escorted him to a holding room. Shepard then told Lieutenant Wise that he needed medical treatment because Quillen roughed him up during the escort. Wise offered to "maybe . . . work something out" and suggested Shepard recant his statement against Quillen, but the inmate persisted. Wise replied that Shepard would be placed in administrative segregation for reporting Quillen. Shepard decided to go forward with his complaint. That same day, he was transferred to a double cell in the

---

[1] The facts are based on Shepard's allegations, which we must take as true at this stage of the proceedings. *See Thomas* v. *Ponder*, 611 F.3d 1144, 1149 (9th Cir. 2010). The district judge did not consider Shepard's statement of undisputed facts and opposition to defendants' motion for summary judgment because he believed them to be unattested. But at the end of each of these documents, above Shepard's signature, there is a handwritten statement that reads: "I declare under penalty of perjury that the foregoing is true and correct and is executed on March 4, 2012." Accordingly, the district court erred in failing to consider these documents. *See* 28 U.S.C. § 1746 (unsworn statements are admissible as long as attested to under penalty of perjury); *Johnson* v. *Meltzer*, 134 F.3d 1393, 1400 (9th Cir. 1998) ("[A] verified motion functions as an affidavit.").

Administrative Segregation Unit (ASU), where he spent about three months.

Shepard filed a section 1983 suit alleging that Wise retaliated against him for reporting Quillen and that Quillen used excessive force while escorting him to the holding cell. Adopting the magistrate judge's findings and recommendations, the district court granted Wise's motion for summary judgment.[2]

## DISCUSSION

The district court determined that Shepard "failed to establish a triable issue of material fact for his claim that Defendant Wise retaliated against [him] by placing him in administrative segregation" and that Wise was therefore entitled to qualified immunity. *See Sorrels* v. *McKee*, 290 F.3d 965, 969 (9th Cir. 2002) (explaining that the rights-violation prong of the qualified immunity analysis "mirrors the substantive summary judgment decision on the merits"). We begin with Shepard's claim of a constitutional violation. *See Pearson* v. *Callahan*, 555 U.S. 223, 236 (2009) (noting that "it is often beneficial" to analyze whether the relevant facts make out a constitutional violation before determining whether the right at issue is clearly established).

## A. Whether a right was violated

We have long recognized that a corrections officer may not retaliate against a prisoner for exercising his First

---

[2] With the parties' consent, a magistrate judge presided over the trial on Shepard's excessive-force claim. We affirm the jury verdict for Quillen in a memorandum disposition filed concurrently herewith.

Amendment right to report staff misconduct. *Brodheim* v. *Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). At the same time, we must defer to reasonable decisions of prison officials. *See Turner* v. *Safley*, 482 U.S. 78, 84–85 (1987); *Rizzo* v. *Dawson*, 778 F.2d 527, 532 (9th Cir. 1985). When a prisoner claims retaliation, we strike this balance by requiring him to show that (1) "a state actor took some adverse action . . . (2) because of (3) [the] prisoner's protected conduct, . . . that such action (4) chilled [his] exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes* v. *Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote omitted).

Wise doesn't dispute—nor could he—that Shepard has established the first element. In *Watison* v. *Carter*, we found that being placed in administrative segregation constitutes an adverse action. 668 F.3d 1108, 1115 (9th Cir. 2012); *see also Austin* v. *Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004). Indeed, Wise's alleged statement that "I'm go [sic] send you to ad/seg for reporting my officer," is enough. As we explained in *Brodheim*, "the mere threat of harm can be an adverse action" in the retaliation context. 584 F.3d at 1270 (emphasis removed). Nor is there any doubt that Shepard's complaints about Quillen amounted to protected conduct. *See Austin*, 367 F.3d at 1170–71 (quoting *Hines* v. *Gomez*, 108 F.3d 265, 269 (9th Cir. 1997)). Wise argues, however, that there are no genuine factual disputes as to the remaining three elements of Shepard's claim.

**1.** To establish causation, Shepard must "put forth evidence of retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of material fact as to [Wise's] intent" in sending Shepard to administrative segregation. *Brodheim*, 584 F.3d at 1271 (quoting *Bruce* v.

*Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003)); *see Hartman* v. *Moore*, 547 U.S. 250, 259 (2006) (explaining that a section 1983 plaintiff "must show a causal connection between a defendant's retaliatory animus and subsequent injury in any sort of retaliation action"). Wise claims a California prison regulation required him to transfer Shepard to administrative segregation as soon as Shepard alleged Quillen assaulted him. That regulation provided:

> When an inmate's presence in an institution's general inmate population presents an immediate threat to the safety of the inmate or others, endangers institution security or jeopardizes the integrity of an investigation of an alleged serious misconduct or criminal activity, the inmate shall be immediately removed from general population and be placed in administrative segregation.

Cal. Code Regs. tit. 15, § 3335(a) (2005).[3] Wise argues that section 3335 is nondiscretionary as applied to prisoners who allege serious staff misconduct. The reasoning goes like this: An allegation of serious officer misconduct triggers an investigation. An inmate's presence in the general population will jeopardize that investigation. Therefore, Wise didn't place Shepard in administrative segregation because of any protected conduct. He did it to comply with the regulation.

But section 3335 says nothing about reports of staff misconduct. The regulation lists three predicates that, if met, require placing an inmate in administrative segregation: threat

---

[3] The current version of section 3335 is substantially similar. *See* Cal. Code Regs. tit. 15, § 3335 (2016).

to safety, endangering institutional security and jeopardizing the integrity of an investigation. *Id.* An allegation of serious staff misconduct could trigger one of these predicates, but nowhere does the regulation direct prison officials to place all inmates who complain about mistreatment in administrative segregation. When an inmate complains of staff misconduct, the official must determine whether leaving the inmate in the general population will create safety, security or investigation-related concerns.

Perhaps California prison officials treat section 3335 as nondiscretionary in circumstances such as these; or, perhaps, no matter the actual policy, Wise believed the regulation was nondiscretionary. But the only evidence of either possibility comes from Wise himself. He claims in an interrogatory response that "[prison] policy provides that, when an inmate makes a staff complaint, the inmate is to be placed in administrative segregation for his own protection pending an investigation . . . . [A]cting pursuant to this policy, I ordered that [Shepard] be placed into administrative segregation pending an investigation of his allegations." In another response, Wise adds: "This transfer was not done as a reprisal against the plaintiff or in retaliation for having made claims of staff misconduct." Wise's version of events might convince a jury that he bore no retaliatory animus when he threatened to transfer Shepard to administrative segregation and then followed through on the threat. But it does not establish conclusively that the policy Wise references actually exists.

There is, moreover, evidence in the record casting doubt on Wise's explanation. For one, Shepard has shown "proximity in time between protected speech and the alleged retaliation." *McCollum* v. *Cal. Dep't of Corrs. & Rehab.*,

647 F.3d 870, 882 (9th Cir. 2011) (quoting *Allen* v. *Iranon*, 283 F.3d 1070, 1077 (9th Cir. 2002)). Wise ordered the transfer on the same day that Shepard complained about Quillen. Wise also undoubtedly "expressed opposition to the speech." *Id.* (quoting *Allen*, 283 F.3d at 1077); *see also Jones* v. *Williams*, 791 F.3d 1023, 1036 (9th Cir. 2015). When Shepard insisted he needed medical treatment, Wise allegedly offered to "work something out" and nudged Shepard to recant his allegation of abuse. When Shepard persisted, Wise said he was going to send Shepard to administrative segregation "for reporting [his] officer."

There's more. As required by regulation, Wise justified his decision on a "114-D" form. *See* Cal. Code Regs. tit. 15, § 3336(a) (2005).[4] The form provides various explanations as to why Shepard was placed in administrative segregation, only some of which support Wise's explanation. At the top of the form, under the heading "Reason(s) for Placement," three boxes are checked: "presents an immediate threat to the safety of self or others"; "jeopardizes integrity of an investigation"; and "endangers institution security." Next, above Wise's signature, a typed message reads: "[Y]ou alleged that Officer T. Quillen physically assaulted you. Based on this, your presence on this facility jeopardizes the integrity of an investigation into this matter." Below Wise's signature, there is a check mark in a "yes" box next to the phrase "ASU placement is for disciplinary reasons." This supports Shepard's argument that he was being placed in administrative segregation as punishment rather than to protect an investigation. Further down the form is a section

---

[4] The requirement that the prison justify a prisoner's placement in administrative segregation is now codified at Cal. Code Regs. tit. 15, § 3335(b) (2016).

signed by an "administrative reviewer," Captain Diaz. The handwritten words "security threat" appear just above Diaz's signature in a box labeled "Reason for Decision." This too is inconsistent with Wise's explanation and thus supports the inference that reliance on section 3335 was a pretext.

Although a jury could conclude that the form negates Shepard's claim of retaliatory animus, there is sufficient ambiguity for a jury to find otherwise. The form features four different reasons, articulated by at least two different officers, for Shepard's confinement. Only two of those reasons—that Shepard's presence in the general population might jeopardize an investigation and his own safety—are consistent with Wise's story on appeal. And in explaining how the former reason justifies the transfer, Wise explicitly cites Shepard's grievance. *Cf. Jones*, 791 F.3d at 1036 ("The face of the daily failure form . . . cites Jones's discrimination complaints and threats to sue as reasons for its issuance . . . ."). The form's inconsistences could help Shepard convince a jury that Wise's reason for initiating the transfer was pretextual and that Wise "abused [section 3335 and the Form 114-D procedure] as a cover or a ruse to silence and punish" Shepard. *Bruce*, 351 F.3d at 1289.

**2.** Wise also argues that placing an inmate in administrative segregation following a complaint of abuse by staff isn't the kind of adverse action that chills an inmate's exercise of his First Amendment rights. In his view, the policy he claims he was following encourages complaints of staff misconduct by ensuring that the inmate will be separated from his alleged abuser while an investigation takes place. But for an inmate to show a chilling effect, the harm need only be "more than minimal." *Watison*, 668 F.3d at 1114.

In fact, the harm suffered by prisoners in administrative segregation is significantly more than minimal. According to Shepard, his time in the ASU featured reduced access to phone calls and recreation. He also says he was confined to his cell for "all but 2 hours per week." This is plausible. Prior to 2013,[5] inmates in California ASUs were deprived of all family visits; their only access to recreation or entertainment was "[y]ard access limited by local institution/facility security needs"; and they could use the phone "on an emergency basis only as determined by institution/facility staff." *Coleman* v. *Brown*, 28 F. Supp. 3d 1068, 1096 (E.D. Cal. 2014). District Judge Karlton, deeming ASU conditions to be "harsh, restrictive and non-therapeutic," found that keeping mentally ill inmates there for non-disciplinary reasons violated their Eighth Amendment rights. *Id.* at 1099.[6]

Just last term, Justice Kennedy wrote about the horrors of solitary confinement, concluding that "[y]ears on end of near-total isolation exact a terrible price." *See Davis* v. *Ayala*, 135 S. Ct. 2187, 2208–10 (2015) (Kennedy, J., concurring). He was prompted to do so after learning that the death-row habeas petitioner before him had been isolated in a one-person cell for the "great majority of his more than 25 years

---

[5] The events in this case took place in 2008.

[6] The state amended its regulations in 2013 to place fewer restrictions on inmates such as ASU residents who are in "Non-Disciplinary Segregation." *Coleman*, 28 F. Supp. 3d at 1096. But even with those amendments, inmates "are still subject to several significant restrictions . . . including no contact visits, significant limits on access to both exercise yards and dayroom, eating all meals in their cells, and being placed in handcuffs and restraints when being moved outside their cells." *Id.* at 1097.

in custody." *Id.* at 2208. Shepard's situation was not identical: He spent his time in a double cell and was released within three months. But at the time Wise threatened to transfer Shepard, there was no indication that he'd have a cellmate, nor did Wise give Shepard a timeline for his eventual transfer back to the general population. It was only after recording a complaint that Shepard was told he would be "placed in the ASU pending the conclusion of an investigation" into Quillen.

Shepard thus faced the possibility of near-total isolation for all but a few hours a week, with little hope for visits, phone calls and recreational opportunities, all for complaining that he was assaulted by a corrections officer. A jury could certainly find that the threat of administrative segregation would chill a "person of ordinary firmness" from complaining about officer misconduct. *Rhodes*, 408 F.3d at 569.

**3.** To argue that Shepard's transfer reasonably advanced legitimate correctional goals, Wise merely borrows generic justifications from section 3335, arguing that Shepard was placed in administrative segregation to "protect[] the integrity of the investigation [into Quillen] and to keep Shepard safe." There's no doubt that corrections officers should strive for unharmed prisoners and untainted investigations. *See Hewitt* v. *Helms*, 459 U.S. 460, 473 (1983), *abrogated on other grounds by Sandin* v. *Conner*, 515 U.S. 472 (1995). The question is whether transferring Shepard in this circumstance reasonably advanced such goals.

In *Bruce*, we explained that "prison officials may not defeat a retaliation claim on summary judgment simply by articulating a general justification for a neutral process, when

there is a genuine issue of material fact as to whether the action was taken in retaliation for the exercise of a constitutional right." 351 F.3d at 1289. Wise has pointed only to section 3335, thus offering merely a generic justification. He hasn't presented evidence that there were any witnesses whom Shepard could have improperly influenced had he been returned to the general population, though the dissent relies on that justification, *see* dissent at 21, 23. Nor has Wise offered a reason as to why Shepard could not have been transferred to a different cell block where he would have been kept away from Quillen and any witnesses. All Wise tells us is that Shepard was on "orientation status" and therefore belonged in the orientation pod. *See Brodheim*, 584 F.3d at 1272 (instructing courts to consider whether there are "ready alternatives available to the prison for achieving the governmental objectives" (internal quotation marks omitted)). And the internally inconsistent 114-D suggests that transferring Shepard was retaliatory rather than reasonably designed to protect Shepard or the investigation.[7] *See Rizzo*, 778 F.2d at 532.

Finally, Wise points out that a prison committee later reviewed the transfer and ordered that Shepard remain in administrative segregation until the investigation into Quillen

---

[7] The dissent claims that we "ignore[] the legitimate institutional concern that we don't want inmates employing bogus staff complaints as a way to manipulate staff or to effectuate a transfer to a more desirable housing unit." Dissent at 22; *see also* dissent at 23–24. Wise never raised this justification for Shepard's transfer to administrative segregation as opposed to some other form of separation from Quillen during the investigation. And even if we accept the concern as relevant here, Wise's actions could still be improperly motivated by retaliation rather than the legitimate penological purpose. Shepard has raised a triable issue of fact on this point.

concluded. The dissent argues that if "the evidence suggested otherwise, the committee would have reversed [the] decision" to transfer Shepard to administrative segregation. Dissent at 23. But the review committee was considering whether the reason for the transfer was sufficient, not whether it was motivated by a desire to retaliate. As *Bruce* recognized, a prison official who uses a valid procedure as subterfuge to obscure retaliation "cannot assert that [his action] served a valid penological purpose, even though [the prisoner] may have arguably ended up where he belonged." 351 F.3d at 1289 (emphasis removed).

Shepard does not challenge the constitutionality of section 3335, which, as he recognizes, "ha[s] nothing to do with placing an inmate in ad seg for making allegations." On this record, we cannot conclude whether officers automatically apply the regulation to all inmates who allege serious staff misconduct. But we seriously doubt that such a policy, if it in fact exists, would withstand constitutional scrutiny. *Cf. Fair Housing Council of San Fernando Valley* v. *Roommate.com, LLC*, 666 F.3d 1216, 1222 (9th Cir. 2012) (explaining that when a statute "can reasonably be read" in two ways, "we can and must choose the construction that avoids raising constitutional concerns"). Inmates must be able to complain about staff; doing so provides a crucial check against those who are in a position to abuse them. Forcing inmates to choose between exercising that constitutional right and going into administrative segregation for an indefinite period of time impermissibly burdens that right.

## B. Whether Shepard's right was clearly established

Wise may nevertheless be entitled to qualified immunity if the right at issue was not "clearly established at the time of the challenged conduct." *Ashcroft* v. *al-Kidd*, 131 S. Ct. 2074, 2080 (2011) (internal quotation marks omitted). The district court didn't reach this question, but Wise urges us to consider it as an alternative ground for affirming. *See Campbell* v. *Wash. Dep't of Soc. & Health Servs.*, 671 F.3d 837, 842 n.4 (9th Cir. 2011) ("We can affirm on any ground supported by the record."). Because the parties have briefed the issue, we consider it here.[8]

A prisoner's general right against retaliatory punishment was clearly established well before Wise transferred Shepard to administrative segregation in 2008. *E.g.*, *Rhodes*, 408 F.3d at 569. Nor was there any question that Shepard was engaged in protected conduct and that he was subject to the type of adverse action that would chill speech. *See Austin*, 367 F.3d at 1170–71 (allowing a retaliation claim to go forward when the harm alleged was placement in administrative segregation). But to overcome qualified immunity, Shepard must show that, as to the precise conduct at issue, "existing precedent . . . placed the . . . constitutional question beyond debate." *al-Kidd*, 131 S. Ct. at 2083. Because the analysis of a retaliation claim is largely subjective, it's difficult to determine at the summary judgment stage whether a

---

[8] The district court's only basis for finding qualified immunity was that "Wise did not violate [Shepard's] constitutional rights." We thus do not fault Shepard for failing to address the "clearly established" prong of the qualified immunity analysis in his opening brief. It is Wise who urges us to affirm on a ground not addressed below; thus, Shepard's "failure to raise the issue . . . did not prejudice [Wise's] defense." *Alcaraz* v. *I.N.S.*, 384 F.3d 1150, 1161 (9th Cir. 2004).

reasonable officer in Wise's position would have known he was violating the law.  As we have explained, a jury could determine that Wise was motivated by retaliatory animus.  But a jury could also conclude that Wise was relying on what he reasonably thought was a prison policy.  In the latter circumstance he wouldn't have violated any right, let alone a clearly established one.  But in the former, Wise would have been "knowingly violat[ing] the law." *See al-Kidd*, 131 S. Ct. at 2085.

Nor, assuming Shepard's version of events is true, can Wise claim that he could have *reasonably* believed his conduct was lawful because he was advancing a legitimate penological goal by complying with section 3335.  *See Schroeder* v. *McDonald*, 55 F.3d 454, 461 (9th Cir. 1995); *see also DiRuzza* v. *City of Tehana*, 206 F.3d 1304, 1314 (9th Cir. 2000) ("For purposes of summary judgment on the question of qualified immunity . . . we must presume the facts to be those most favorable to the non-moving party.").  As we have explained, there's virtually no evidence that Shepard needed to be transferred out of the general population for his own safety or to preserve the integrity of an investigation.  *See supra* at 13.

Wise argues that because section 3335 mandates placing a prisoner in administrative segregation following a complaint, he could not have been on notice that his conduct was unlawful; the dissent echoes Wise's reading of the regulation, dissent at 25.  But the regulation does no such thing, *see supra* at 7–8, let alone authorize prison officials to retaliate against prisoners for complaining about officers.  No reasonable prison official could read the regulation in that way, and Wise has offered no evidence that any other official did so, *see supra* at 8.  Considering the substantial chilling

effect that such a reading would have on the long established right of prisoners to seek redress of grievances, *Cruz* v. *Beto*, 405 U.S. 319, 321 (1972); *O'Keefe* v. *Van Boening*, 82 F.3d 322, 325 (9th Cir. 1996), this interpretation doesn't even "pass[] the laugh test"; its illegality would be "so obvious that any prison official involved in enforcing it should have known he was breaking the law." *Sorrels*, 290 F.3d at 971.

In 2003, five years before the events at issue, we followed "other circuits [in] holding that prison officials may not defeat a retaliation claim . . . simply by articulating a general justification for a neutral process, when there is a genuine issue of material fact as to whether the action was taken in retaliation for the exercise of a constitutional right." *Bruce*, 351 F.3d at 1289. Those circuits have stated their rule even more bluntly, holding that the "policy [against retaliation] applies even where the action taken . . . would otherwise be permissible." *Smith* v. *Maschner*, 899 F.2d 940, 948 (10th Cir. 1990); *accord Woods* v. *Smith*, 60 F.3d 1161, 1165 (5th Cir. 1995). *Bruce* clearly established that prison officials may not abuse a valid procedure "as a cover or a ruse to silence and punish" an inmate. 351 F.3d at 1289. Accordingly, the contours of Shepard's right against retaliation were "sufficiently clear that a reasonable official" in Wise's position would have understood "that what he [was] doing violate[d] that right." *Anderson* v. *Creighton*, 483 U.S. 635, 640 (1987). Wise may have done just what *Bruce* prohibits. Resolution of the disputed factual issues is thus "critical to a proper determination of [Wise's] entitlement to qualified immunity." *Glenn* v. *Wash. Cty.*, 673 F.3d 864, 870 & n.7 (9th Cir. 2011); *see also Sloman* v. *Tadlock*, 21 F.3d 1462, 1468 (9th Cir. 1994) (noting a jury might be "best suited to determine the reasonableness of an

officer's conduct in light of the factual context in which it takes place").

\* \* \*

Shepard has established a genuine issue of material fact as to whether Wise retaliated against him. He has also shown that Wise isn't entitled to qualified immunity at this stage. Accordingly, we reverse the district court's grant of summary judgment in Wise's favor.

**AFFIRMED** in part, **REVERSED** in part and **REMANDED.**

Costs to Shepard against Wise and to Quillen against Shepard.

---

TALLMAN, Circuit Judge, dissenting:

Running a prison is an "extraordinarily difficult undertaking." *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). Prison administrators, tasked with managing a "volatile environment," need flexibility to make on-the-ground judgment calls relating to inmate safety and maintaining order in the institution. *Sandin v. Conner*, 515 U.S. 472, 482 (1995). That includes having in place policies and procedures to address complaints lodged against staff by inmates so that inmates cannot manipulate the system for improper reasons. It comes as no surprise that the Supreme Court has time and again reminded us that courts are "ill equipped" to address the "increasingly urgent problems" facing prisons. *Turner v. Safley*, 482 U.S. 78, 84 (1984) (citation omitted). This case

illustrates why we need to be careful before interfering in the way a prison is run.

Today, the majority denies Lieutenant Wise qualified immunity despite his reliance on a legitimate California prison regulation authorizing the transfer of an inmate into administrative segregation after receiving a complaint against a correctional officer that alleged serious misconduct. In my view, the majority decision improperly entangles itself in the "day-to-day management of [Corcoran State] prison." *Sandin*, 515 U.S. at 482. Because Lieutenant Wise is entitled to qualified immunity for reasonably following prison policy, I respectfully dissent.

# I

The First Amendment prohibits prison officials from retaliating against prisoners for exercising their First Amendment rights. *See Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003). A prisoner retaliation claim consists of five elements: "(1) [a]n assertion that a state actor took some adverse action against an inmate, (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2004). To survive a motion for summary judgment, a plaintiff must demonstrate a triable issue of material fact on each element. *Brodheim v. Cry*, 584 F.3d 1262, 1269 n.3 (9th Cir. 2009). In evaluating whether the plaintiff has met this burden, the court "should 'afford appropriate deference and flexibility' to prison officials." *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (quoting *Sandin*, 515 U.S. at 482).

The majority concludes that inmate Shepard demonstrated a triable issue of material fact that his constitutional rights were violated when Lieutenant Wise (the watch commander) transferred him to administrative segregation following the lodging of his complaint against another officer. Maj. Op. at 5–14. I disagree. The record is not sufficient to establish that Shepard's transfer to administrative segregation did not "advance legitimate penological goals, such as preserving institutional order and discipline." *Bruce*, 351 F.3d at 1288 (quoting *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994)).

Lieutenant Wise maintains that he transferred Shepard to administrative segregation by following a California Department of Corrections and Rehabilitation (CDCR) regulation designed to protect prisoners and ensure the integrity of internal investigations. This regulation provides:

> When an inmate's presence in an institution's general inmate population presents an immediate threat to the safety of the inmate or others, endangers institution security or jeopardizes the integrity of an investigation of an alleged serious misconduct or criminal activity, the inmate shall be immediately removed from general population and be placed in administrative segregation.

Cal. Code Regs. Tit. 15, § 3335(a) (2005).

Shepard's transfer into administrative segregation occurred immediately after he reported that Officer Quillen (assigned to his housing unit) had used excessive force after Shepard refused to identify himself during a cell count,

necessitating removing him to a nearby holding cell for the violation. Lieutenant Wise's decision to separate Shepard from Officer Quillen was in conformance with the prison regulation and made in furtherance of a legitimate correctional goal.

If Shepard had not been transferred into administrative segregation, he would have been left in the same housing unit with Officer Quillen, the officer against whom Shepard had complained. And if Shepard's allegations were true, and Officer Quillen employed excessive force in moving him, it was only reasonable to separate Shepard from Officer Quillen to ensure Shepard's continued safety. Shepard's transfer also protected the integrity of the prison's internal investigation into Officer Quillen's misconduct by taking away any opportunity for Officer Quillen to pressure Shepard to recant his allegations or to prevent Shepard from improperly importuning other inmate witnesses prior to obtaining witness statements.

In short, Lieutenant Wise received a complaint that one of his correctional officers had engaged in abusive misconduct. Knowing this, Lieutenant Wise made a judgment call: Shepard's continued presence in his housing unit "present[ed] an immediate threat to [Shepard's] safety" and "jeopardize[d] the integrity of an investigation" into Officer Quillen's alleged misconduct. Cal. Code Regs. Tit. 15, § 3335(a) (2005). Lieutenant Wise properly followed prison policy and transferred Shepard into administrative segregation in furtherance of those legitimate penological goals. A reasonable correctional supervisor would have done the same.

The majority suggests that Lieutenant Wise relied on the prison regulation as a pretext to retaliate against Shepard for

reporting Officer Quillen. Maj. Op. at 8–10; *see Bruce*, 351 F.3d at 1289 ("[I]f . . . the defendants abused [prison] procedure as a cover or ruse to silence and punish [the plaintiff] because he filed grievances, they cannot assert that [their actions] served a valid penological purpose[.]"). I disagree. The majority ignores the legitimate institutional concern that we don't want inmates employing bogus staff complaints as a way to manipulate staff or to effectuate a transfer to a more desirable housing unit.

Lieutenant Wise initiated the process to transfer Shepard to administrative segregation on the same day that Shepard complained about Officer Quillen, July 15, 2008. The majority suggests this close temporal proximity between Shepard's speech and Lieutenant Wise's adverse action is evidence of retaliatory motive. Maj. Op. at 8–9; *see McCollum v. Cal. Dep't of Corr. & Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011). Not here. If the understandable penological goals are to be effectuated, the transfer must occur immediately.

That is why the timing evidence does not suggest an improper motive, but rather *supports* Lieutenant Wise's claims that Shepard's transfer served a legitimate correctional goal. Logically, § 3335 protects a complaining inmate from staff reprisals only if the inmate is transferred immediately after making a complaint against a guard in his housing unit. And here, prison officials kept Shepard in administrative segregation throughout the entire investigation of Officer Quillen, transferring him back to the general population shortly after the investigation closed. *See* Cal. Code Regs. Tit. 15, § 3339(a) ("Release from administrative segregation shall occur at the earliest possible time in keeping with the

. . . reasons for the inmate's placement in administrative segregation.").

Shepard's placement notice, which both Lieutenant Wise and Shepard signed on July 17, 2008, states: "[Y]ou . . . are being removed from the Facility III-A General Population and being placed in the Administrative Segregation Unit (ASU) pending an investigation into your allegations of staff misconduct." Boxes checked on the form for "Reason(s) for Placement" indicate that Shepard was transferred because he "presents an immediate threat to the safety of self or others," "jeopardizes [the] integrity of an investigation of alleged serious misconduct," and "endangers institution security."

Lieutenant Wise's transfer decision was reviewed and endorsed by a prison committee on July 23, 2008. The committee noted, "'S' was placed in ASU [from] Facility 3A, pending investigation into allegation of alleged staff misconduct by Officer T. Quillen as 'S' alleged that 'S' was physically assaulted by him." Even construing the evidence in the light most favorable to Shepard, following the prison policy furthered the legitimate correctional goal of shielding Shepard from any reprisal and making sure the investigation was not improperly colored by Shepard's continued presence in the unit housing the witnesses. Had the evidence suggested otherwise, the committee would have reversed that decision.

Finally, the majority faults Lieutenant Wise for not "offer[ing] a reason as to why Shepard could not have been transferred to a different cell block where he would have been kept away from Quillen and any witnesses." Maj. Op. at 13. This is not the standard. Any suggestion that a prison official must transfer a complaining inmate to a different pod every

time an inmate lodges an allegation of staff misconduct shows little regard for the "inordinately difficult" task of running a prison—one that is "peculiarly within the province of the legislative and executive branches of government." *Turner*, 482 U.S. at 85. Such a standard would certainly incentivize a flurry of frivolous complaints by prison inmates hoping to be transferred into a more favorable pod. One can easily imagine why, for example, members of the same prison gang would like to be housed together. Or an inmate might wish to be moved so he can be near another inmate or guard against whom he holds an outstanding grudge to launch an attack. Such considerations are exactly why the Supreme Court has instructed us to practice "judicial restraint" before entangling ourselves in the inner-workings of prisons. *Id.*

## II

Even assuming Shepard has alleged facts that show a constitutional violation, Lieutenant Wise is still entitled to qualified immunity if the right at issue was not "clearly established" at the time of the challenged conduct. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). A clearly established right is one that is "sufficiently clear that *every* reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (emphasis added) (internal quotation marks and alteration omitted). Shepard can't meet that high burden here.

The question we must answer is: would a reasonable prison official in Lieutenant Wise's position have known that placing Shepard in administrative segregation after a complaint of serious staff assault, as directed by a clearly legitimate prison regulation, was a violation of Shepard's

constitutional rights? I am at a loss as to how the answer to this question can be anything but a resounding "no."

The relevant prison regulation, § 3335, required Lieutenant Wise to transfer Shepard into administrative segregation following his complaint of serious staff misconduct if Lieutenant Wise determined that Shepard's personal safety was at risk or that Shepard's continued presence in the housing unit threatened the integrity of the resulting internal investigation. The record amply demonstrates why it was reasonable for Lieutenant Wise to transfer Shepard into administrative segregation for these legitimate reasons.

Under these circumstances, a reasonable officer in Lieutenant Wise's position could not have known that complying with a mandatory prison regulation would be a violation of Shepard's constitutional rights. In concluding otherwise and second-guessing his decision, the majority subjects Lieutenant Wise to unnecessary "harassment, distraction, and liability." *Pearson*, 555 U.S. at 231. The Supreme Court has told us that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Lieutenant Wise's decision to transfer Shepard into administrative segregation falls squarely within the range of conduct that is protected by qualified immunity. The district court properly granted him the law's protection. My colleagues err in refusing to apply it.

I respectfully dissent.